IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

G.J., personally and by and          *
through his parents, E.J. and
L.J.,                                *

     Plaintiffs,                     *

                                   CASE NO. 4:09-CV-22 (CDL)
vs.                                  *

MUSCOGEE COUNTY SCHOOL DISTRICT,  *

     Defendant.                      *

_____

O R D E R

In this action, Plaintiffs appeal two final decisions of an Administrative Law Judge ("ALJ") that were issued on behalf of the Georgia Office of State Administrative Hearings ("OSAH").  In both of those decisions, *G.J. v. Muscogee County School District*, OSAH-DOE-SE-0902167-106-Miller ("*G.J.-1*") and *G.J. v. Muscogee County School District*, OSAH-DOE-IEE-0908379-106-Miller ("*G.J.-2*"), the ALJ granted summary determination in favor of Defendant Muscogee County School District ("MCSD") on Plaintiffs' claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").[1] Specifically, in *G.J.-1,* the ALJ found that Plaintiffs withheld their consent to the reevaluation of their son and that this refusal absolved Defendant from any further responsibility to provide

_____

[1]Congress generally amended IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 ("IDEIA"), which took effect on July 1, 2005.  The statutory citations in this Order refer to IDEA as recodified by IDEIA.

services to Plaintiffs' son.   In *G.J.-2,* the ALJ found that Plaintiffs were not entitled to an "Independent Educational Evaluation."   In addition to their appeal of these decisions by the ALJ, Plaintiffs also assert non-IDEA claims under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and 42 U.S.C. § 1983 ("§ 1983").

Presently pending before the Court is Plaintiffs' motion to reverse the ALJ's decisions (Doc. 29) and MCSD's motion to dismiss the non-IDEA claims (Doc. 7).[2]  For the reasons set forth below, the Court makes the following rulings: First, Plaintiffs' conduct does not demonstrate a refusal to have their son reevaluated sufficient to absolve MCSD from providing services to him; however, Plaintiffs are not permitted to dictate the terms and conditions of the reevaluation, and, therefore, the Court orders that a reevaluation be conducted consistent with this Order.   Accordingly, Plaintiffs' motion to reverse the ALJ's decision in *G.J.-1* is granted in part, and the ALJ's decision in *G.J.-1* is reversed to the extent it is inconsistent with this Order.   Second, Plaintiffs are not entitled to

---

[2]MCSD's initial motion to dismiss encompassed a motion to dismiss Plaintiffs' IDEA claims.   After a hearing in this matter, the parties agreed that the Court's review of MCSD's motion to dismiss the non-IDEA claims should be separate from the Court's review of the ALJ's decisions on Plaintiffs' IDEA claims.   After supplemental briefing, the motion to dismiss only addresses Plaintiffs' non-IDEA claims.

an "Independent Educational Evaluation" at this time, and, therefore, Plaintiffs' motion to reverse the ALJ's decision in *G.J.-2* is denied, and the ALJ's decision in *G.J.-2* is affirmed.   Third, because Plaintiffs have not exhausted their administrative remedies, the MCSD's motion to dismiss Plaintiffs' federal non-IDEA claims is granted.[3]

The Court previously stayed briefing on Plaintiffs' motion to present additional evidence (Doc. 15), Plaintiffs' motion to increase discovery limits (Doc. 21), and Plaintiffs' motion for partial summary judgment (Doc. 32).   As discussed more fully below, none of the discovery sought by Plaintiffs relates to the issues before the Court at this time, so the motion to present additional evidence is denied, and the motion to increase discovery limits is moot.   Based on today's Order, Plaintiffs' motion for partial summary judgment is also moot.

BACKGROUND AND SUMMARY OF ALJ'S FINAL ORDERS[4]

Plaintiffs E.J. and L.J. are parents of Plaintiff G.J., a child with autism and brain injuries.   G.J. is a student at a MCSD school,

---

[3]To the extent Plaintiffs are attempting to assert any state law claims under Georgia law that are not specifically addressed in this Order, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

[4]The Court received the records of the ALJ proceedings.   The Court cites the records from *G.J.-1* as G.J.-1 R. and the records of *G.J.-2* as G.J.-2 R.

and he is eligible to receive special education services pursuant to IDEA. (*E.g.,* G.J.-1 R. 83, Final Decision Order Granting Def.'s Mot. for Summ. Determination 2 ¶¶ 1-2 [hereinafter G.J.-1 Final Decision].) G.J., who is now nearly eight years old, is non-verbal and self-abusive. (Compl. ¶¶ 54-55.) Plaintiffs contend that MCSD has failed to provide G.J. with free appropriate public education ("FAPE") as required under IDEA.[5] (*See generally, e.g.,* G.J.-1 R. 1, Due Process Compl.) When Plaintiffs raised their concerns about G.J.'s placement, MCSD sought permission of E.J. and L.J. to reevaluate G.J. so MCSD could update G.J.'s individualized education program ("IEP"). (*E.g.,* G.J.-1 Final Decision at 2 ¶ 3.) The present dispute between the parties is over whether G.J.'s parents withheld their consent to the reevaluation, what impact such withholding had on MCSD's obligations under IDEA, and whether Plaintiffs were entitled to an Independent Educational Evaluation ("IEE"). The ALJ found that G.J.'s parents did withhold their consent to the reevaluation (*id.* at 6-8), that the failure to consent meant that MCSD was no longer required to provide services to G.J. (*id.* at 8), and that Plaintiffs were not entitled to an IEE (G.J.-2 R. 51, Final Decision Order Granting Def.'s Mot. for Summ.

---

[5]Plaintiffs believe that a private residential placement is the only way G.J. can receive FAPE. (*E.g.,* Compl. ¶ 208.)

Determination and Den. Pl.'s Mot. for Summ. Determination 8-10 [hereinafter G.J.-2 Final Decision]).

DISCUSSION

**I.   IDEA Claims**

    A.   <u>IDEA Purpose and Background</u>

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Congress enacted IDEA's predecessor, the Education of the Handicapped Act, "after finding that school systems across the country had excluded one out of every eight disabled children from classes." *Honig v. Doe*, 484 U.S. 305, 324 (1988).

IDEA provides federal assistance to States that provide FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). After a child is identified as disabled, the school, together with the child's parents, must develop, review, and revise an IEP that complies with IDEA's procedures and is "reasonably calculated to enable the child to receive educational benefits." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008) (internal quotation marks omitted); *see also* 20 U.S.C. §§ 1412(a)(4), 1414(d). To provide FAPE, the IEP need not provide the "best possible"

5

education.  *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 n.1 (11th Cir. 2003) (internal quotation marks omitted).  The school must, however, provide the child with "some educational benefit"-a "basic floor of opportunity."  *CP v. Leon County Sch. Bd. Fla.*, 483 F.3d 1151, 1153 (11th Cir. 2007) (internal quotation marks omitted).

Under IDEA, a reevaluation of a student receiving special education services is required "at least once every 3 years, unless the parent and the local educational agency agree that a reevaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(B)(ii).  The statute and the regulations promulgated pursuant to it set forth detailed evaluation procedures.  *Id.* § 1414(b); 34 C.F.R. § 300.304(b).  The statute and regulations also dictate what data an IEP team must evaluate in developing an educational program; the data includes "evaluations and information provided by the parents of the child," "classroom-based observations," and "observations by teachers and related services providers." 20 U.S.C. § 1414(c)(1)(A); *accord* 34 C.F.R. § 300.305. Parental consent is required for a reevaluation.  20 U.S.C. § 1414(c)(3); *accord* 34 C.F.R. § 300.300(c).  Parents also have a right, under certain circumstances, "to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1); *accord* 34 C.F.R. § 300.502.

One of the key purposes of many IDEA provisions is to ensure parental involvement in the disabled child's education; the core of IDEA "is the cooperative process that it establishes between parents and schools[, and t]he central vehicle for this collaboration is the IEP process." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53, (2005) (internal citation omitted).  If the parents believe that their child has been denied rights under IDEA, "they are entitled to a hearing 'conducted by the State educational agency or by the local educational agency' as determined by state law." *Draper*, 518 F.3d at 1280 (quoting 20 U.S.C. § 1415(f)(1)(A)).  In addition, a school district may request a due process hearing to enforce its rights under IDEA.  20 U.S.C. § 1415(b)(7); Ga. Comp. R. & Regs. 160-4-7-.12(3); *see also generally M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1159-60 (11th Cir. 2006) (affirming ALJ's decision, on due process complaint brought by school district, to order reevaluation of student without parental consent).  In Georgia, such hearings are conducted by OSAH ALJs. O.C.G.A. § 50-13-41(a).

Under IDEA, "[a]ny party aggrieved" by the final decision of an ALJ may bring a civil action in a federal district court. 20 U.S.C. § 1415(i)(2)(A).  The district court "shall receive the records of the administrative proceedings;" "shall hear additional evidence at the request of a party;" and "basing its decision on the

preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C).

B.   Standard of Review

The Eleventh Circuit has described the district court's review of an IDEA appeal as a "judgment on the record." *Loren F.*, 349 F.3d at 1313 (internal quotation marks omitted). Therefore, the administrative record must be the basis for the Court's decision, and the Court must conduct "an entirely *de novo* review of the ALJ's findings." *CP*, 483 F.3d at 1156 n.4. In a typical IDEA appeal, where the ALJ has conducted a hearing on a Due Process Request, the Court must give "due weight" to the administrative findings, meaning that the district court must give "some judicial deference to local administrative agency judgments, though that's typically limited to matters calling upon educational expertise." *Loren F.*, 349 F.3d at 1314 & n.5 (internal citation omitted). Here, however, the ALJ decided the matter on MCSD's motion for summary determination, which, as discussed in more detail below, is similar to a motion for summary judgment under Federal Rule of Civil Procedure 56. The ALJ did not make findings of fact based on a hearing with testimony from witnesses. Rather, the ALJ viewed the written evidence submitted by the parties, including affidavits, in the light most favorable to Plaintiffs and determined which facts were undisputed. (G.J.-1 Final Decision 2; G.J.-2 Final Decision 2.) The Court concludes that it

need not give any special weight to such findings of fact; the Court can review the evidence that was before the ALJ to determine which facts were or were not disputed. The Court reviews the ALJ's conclusions of law *de novo*.

   C.   Administrative Process

   The administrative process in this action was governed by the Georgia Department of Education regulations on special education hearing processes, Ga. Comp. R. & Regs. 160-4-7-.12(3), and the OSAH Administrative Rules of Procedure, Ga. Comp. R. & Regs. 616-1-2-.15 [hereinafter OSAH R. #]. After Plaintiffs filed their due process complaint in *G.J.-1*, MCSD made a counterclaim seeking a declaration that MCSD is entitled to conduct a reevaluation and that Plaintiffs may not place conditions on the reevaluation. (G.J.-1 R. 11, MCSD Resp. & Countercl. to Pl.'s Am. Due Process Hearing Request 44 ¶¶ 53-55.) MCSD also made a counterclaim seeking a declaration that Plaintiffs are not entitled to an IEE until MCSD performs an evaluation with which E.J. and L.J. disagree. (*Id.* at 44 ¶¶ 59-62.) On Plaintiffs' motion, the ALJ struck the counterclaims, concluding that IDEA does not permit them because the statute does not expressly authorize counterclaims. (G.J.-1 R. 48, Order, Oct. 29, 2008.) MCSD then filed its own due process complaint, *Muscogee County School District v. G.J.*, OSAH-DOE-IEE-0912150-Miller, seeking the same relief it sought in its counterclaims. Plaintiffs moved to dismiss

the complaint, and MCSD withdrew it.  Therefore, the only matters before the ALJ were those initiated by Plaintiffs' two due process complaints.

After the ALJ took up various pre-hearing matters with the parties, MCSD moved for summary determination under OSAH Rule 15 in both *G.J.-1* and *G.J.-2*, and Plaintiffs moved for summary determination in *G.J.-2*. Summary determination is similar to summary judgment under Federal Rule of Civil Procedure 56.  The movant must show, "based on supporting affidavits or other probative evidence . . . that there is no genuine issue of material fact for determination." OSAH R. 15(1). The party opposing the motion for summary determination "may not rest upon mere allegations or denials, but must show, by affidavit or other probative evidence, that there is a genuine issue of material fact for determination in the hearing." OSAH R. 15(3). The ALJ may decide that an evidentiary hearing is required and that summary determination is thus inappropriate, OSAH R. 15(6), but if the ALJ finds that the issue is proper for summary adjudication, then no hearing is required, OSAH R. 15(7).

MCSD supported its motions for summary determination with affidavits of one MCSD employee and two of MCSD's attorneys, though

Plaintiffs did not have an opportunity to cross-examine them.[6]  (Exs. to G.J.-2 R. 20.)  Similarly, Plaintiffs supported their motion for summary determination with various affidavits and exhibits.  (Exs. to G.J.-2 R. 15.)  Plaintiffs responded to MCSD's motions for summary determination with a number of exhibits, including the affidavits of L.J., E.J., and Dr. Robert Babcock.[7]  (*E.g.,* G.J.-2 R. 47; *see also* Exs. to G.J.-2 R. 15.)

---

[6]Neither the OSAH Administrative Rules of Procedure nor the DOE special education hearing process regulations provide for discovery prior to summary determination.  OSAH Rule 38 states, "Discovery shall not be available in any proceeding before an ALJ except to the extent specifically authorized by a statute or rule."

[7]Earlier in the administrative proceeding, Plaintiffs sought leave to file a separate affidavit of E.J. dated October 29, 2008, as a supplement to a report on the parties' resolution session. (G.J.-1 R. 50, Pls.' Mot. for Leave to File Factual Statement After Resolution Meeting Disclosure.) The ALJ denied that motion because she "specifically directed the parties in this matter to limit the report on the resolution session to a statement as to whether a settlement had been reached." (G.J.-1 R. 51, Order, Oct. 31, 2008.)  According to the affidavit, MCSD had a behavior analyst observe G.J.'s classroom behavior at some point after Plaintiffs filed their due process complaint. (Ex. B to G.J.-1 R. 50.)  Though that person did not do an official evaluation of G.J., the analyst opined that G.J. did not need a residential placement.  (*Id.*)  MCSD's counsel also represented that G.J.'s IEP team had not agreed to residential placement in the absence of a reevaluation. (*Id.*)

Plaintiffs contend that the ALJ's exclusion of the affidavit was error.  (Pls.' Mot. to Reverse ALJ 12.)  The Court notes that Plaintiffs filed their response to MCSD's motion for summary determination two weeks later, on November 18, 2008.  Among other things, the response was supported by a new affidavit from E.J. dated November 17, 2008. (Ex. 16 to G.J.-2 R. 47, Aff. of Mr. E.J., Nov. 17, 2008.)  Given that Plaintiffs were permitted to submit affidavits after the affidavit in question was struck and that E.J.'s October affidavit would not create any genuine issues of material fact with regard to the consent issue at the heart of the ALJ's ruling, any error in striking the affidavit was harmless.

11

D.   ALJ'S Final Orders

    1.   *ALJ'S Findings of Undisputed Material Fact*

    The ALJ made the following findings of undisputed material facts in both *G.J.-1* and *G.J.-2*.   The findings of fact are identical in both orders.   Plaintiffs do not contest these findings of fact.[8] (Pls.' Mot. to Reverse ALJ 20.)

    G.J. is an elementary school student in the MCSD system.   (G.J.-1 Final Decision 2 ¶ 1.)   MCSD performed psychological, speech, physical therapy, and occupational therapy evaluations of G.J. in 2005, and MCSD found G.J. to be eligible for services under IDEA. (*Id.* at 2 ¶ 2.)   In April of 2008, MCSD convened an IEP meeting and sought the parents' consent to conduct a "comprehensive triennial reevaluation of G.J.," including psychological, speech/language, physical therapy, and occupational therapy evaluations.   (*Id.* at 2 ¶ 3.)   MCSD told E.J. and L.J. that if additional evaluations were necessary, MCSD would seek separate consent for them.   (*Id.* at 2 ¶ 4.)   On May 19, 2008, L.J. signed a consent form agreeing that MCSD could conduct a vision and hearing screening of G.J., but she noted that she "refused other testing until attorney approve[s] services per IEP." (*Id.* at 3 ¶ 5 (alteration in original) (internal quotation marks omitted).)   On May 20, 2008, L.J. signed another consent form

------

    [8]Plaintiffs do contend that the undisputed facts are not sufficient to support the ALJ's conclusions of law.   (Pls.' Mot. to Reverse ALJ 20.)

regarding MCSD's reevaluation but noted that she did not agree to the reevaluation: "Not approved by IEP or parents until lawyers work out guidelines.  MCSD cannot evaluate [G.J.] for anything."  (*Id.* at 3 ¶ 6 (alteration in original) (internal quotation marks omitted).)  On June 3, 2008, both L.J. and E.J. signed another consent form regarding the reevaluation, agreeing that MCSD could evaluate G.J. "as explained and granted in the addendum."  (*Id.* at 3 ¶ 7 (internal quotation marks omitted).)  The addendum provided:

> (1) the terms, scope, and usage of the evaluation shall be as identified for the purposes of this consent as the IEP meeting concerning [G.J.], held on 4-23-08 only;
>
> (2) the evaluation shall be conducted by Dr. Lankenau;
>
> (3) the evaluation shall be conducted pursuant to the ethical standards of the American Psychological Association and, if different, also pursuant to the standards and ethical rules of the Georgia State Composite Board for applied licensed psychologists;
>
> (4) the evaluation shall include an initial meeting with the parents prior to the evaluation to discuss all aspects of the evaluation and their consent, including the identification of the time and location of the evaluation, and it shall not be considered complete until the evaluator affords the parents the opportunity at a mutually convenient time and place to meet to discuss the evaluation and its results prior to its submission to or use by the IEP team;
>
> (5) this consent is based upon the information provided to the parent(s) at the IEP meeting or in any prior written notice and granted in reliance upon such information and these terms.  Any changes requested by the evaluator or to the evaluator or the System shall invalidate this consent and require additional notice and subsequent consent.  The parents do not agree that the "Examples of Assessment

13

Instruments" attached to the evaluation consent form is an adequate notice for the purposes of obtaining consent;

(6) the evaluation shall be maintained as confidential and shall not be used or distributed in any personal identifying fashion by any third party, person or entity without prior notice and written consent; and

(7) this consent is not a waiver of any rights or actions not explicitly identified, nor should any implied waiver be presumed.

(*Id.* at 3-4 ¶ 8 (alterations in original) (internal quotation marks omitted).)   In addition, on June 5, 2008, L.J. notified MCSD in writing that "no testing, evaluations or anything may be done outside [her] presence."   (*Id.* at 4 ¶ 9 (internal quotation marks omitted).)

2.   *ALJ's Conclusions of Law*

In *G.J.-1*, MCSD moved for summary determination, contending that it was not required to provide special education services to G.J. because his parents had refused to consent to a reevaluation of the child.   The ALJ noted that IDEA and Georgia regulations require triennial reevaluations of children receiving services under IDEA. (*Id.* at 6 (citing 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303(b)(2); Ga. Comp. R. & Regs. 160-4-7-.04(3)(a), (b)).)   The ALJ also observed that a school must provide notice to the child's parents describing the evaluation procedures, and the school must obtain informed consent from the parents before conducting the reevaluation.   (*Id.* (citing 34 C.F.R. §§ 300.300(c)(i), 300.304(a)).) The ALJ concluded that MCSD "was unable to reevaluate G.J. because

14

his parents failed to provide the requisite consent" since "they imposed so many conditions on their consent that it was effectively no consent at all." (*Id.; see also id.* at 8 ("G.J.'s parents, by placing impermissible restrictions on their consent, effectively refused to consent to [MCSD's] IDEA-mandated triennial reevaluation. The parents' failure to consent, in turn, prevented [MCSD] from performing the reevaluation.").)

The ALJ also concluded that "[a]s a direct consequence of [G.J.'s] parents' failure to consent to [MCSD's] proposed reevaluation, [MCSD] is no longer required to provide special education services to him under IDEA." (*Id.* at 8.) The ALJ found that G.J. was thus not entitled to any remedy under IDEA, such as modification of his IEP, reimbursement for private placement, or compensatory education. (*Id.*) Accordingly, the ALJ granted summary determination in favor of MCSD. (*Id.* at 9.)

In *G.J.-2*, the ALJ was presented with cross motions for summary determination. MCSD argued that G.J. was not entitled to an IEE as a matter of law, and Plaintiffs argued that he was. The ALJ found that G.J.'s "right to an IEE, whether publicly or privately funded, arises only if the school district has performed an evaluation or reevaluation with which the Plaintiff disagrees." (G.J.-2 Final Decision 6.) Relying on her decision in *G.J.-1*, the ALJ found that because G.J.'s parents "effectively refused to consent to [MCSD's]

15

proposed reevaluation, [G.J.] is not entitled to an IEE as a matter of law." (*Id.*)  Therefore, the ALJ granted MCSD's motion for summary determination and denied Plaintiffs' motion for summary determination. (*Id.* at 10.)

E.   Additional Facts

Plaintiffs argue that the undisputed facts relied upon by the ALJ are not sufficient to support the ALJ's conclusions of law. Specifically, Plaintiffs contend that genuine issues of material fact exist on the consent issue because, according to Plaintiffs, there is a "substantial dispute" about what happened between the parties as they attempted to resolve their disagreements regarding the reevaluation and placement of G.J.  Plaintiffs appear to contend that the parties agreed to certain conditions for the evaluation at the April 2008 meeting and that the addendum memorialized some of them. Nonetheless, it is undisputed that the parties did not agree to all of the conditions in the addendum during the IEP meeting. (*See* G.J.- 1 Final Decision 7 n.4 (noting that "parties did not have a meeting of the minds with respect to all of the restrictions set forth in the addendum").)  It is also undisputed that Plaintiffs would not consent to a reevaluation of G.J. unless MCSD agreed to some or all of the conditions in the addendum. (*E.g.*, Ex. 16 to G.J.-2 R. 47, Aff. of Mr. E.J. ¶ 41, Nov. 17, 2008 [hereinafter E.J. Aff.].)

16

Plaintiffs also point to evidence that they offered to withdraw the addendum to their consent during a resolution session that took place while the matter was proceeding before the ALJ.  (*Id.* ¶ 39.) However, that same evidence also establishes that Plaintiffs still sought to impose certain conditions on the reevaluation, including a limitation that the reevaluation "not be used in litigation against [Plaintiffs]."  (*Id.* ¶ 41.)

Finally, Plaintiffs contend that they should be permitted to discover and present additional evidence in support of their claims, namely evidence in support of their claim that MCSD's program denied G.J. FAPE.  Such evidence is irrelevant to the issue presently before the Court: whether the ALJ erred in determining that Plaintiffs refused to consent to the reevaluation and that the refusal to consent constituted a waiver of services under IDEA.

F.   Analysis

Children receiving services under IDEA must be reevaluated at least every three years.  20 U.S.C. § 1414(a)(2)(B)(ii).  Informed parental consent is required for a reevaluation.  *Id.* § 1414(c)(3); *accord* 34 C.F.R. § 300.300(c).  "Consent" means that

> (a) The parent has been fully informed of all information relevant to the activity for which consent is sought, in his or her native language, or through another mode of communication;
>
> (b) The parent understands and agrees in writing to the carrying out of the activity for which his or her consent

17

is sought, and the consent describes that activity and lists the records (if any) that will be released and to whom; and

(c)(1) The parent understands that the granting of consent is voluntary on the part of the parent and may be revoked at any time.

34 C.F.R. § 300.9.  Among other things, the parents must be informed about "any evaluation procedures" the school proposes to conduct. *Id.* § 300.304(a).  "If the parent refuses to consent to the reevaluation, the [school district] may, *but is not required to*, pursue the reevaluation by using the consent override procedures" provided for in the regulations.  *Id.* § 300.300(c)(1)(ii) (emphasis added).  The "consent override procedures" include mediation or a due process complaint.  *Id.* § 300.300(a)(3).

When conducting a reevaluation, a school is "entitled to reevaluate [a child] by an expert of its choice."  *M.T.V.*, 446 F.3d at 1160; *see also Shelby S. ex rel. Kathleen T. v. Conroe Indep. Sch. Dist.*, 454 F.3d 450, 455 (5th Cir. 2006).  "[T]he school cannot be forced to rely solely on an independent evaluation conducted at the parents' behest."  *M.T.V.*, 446 F.3d at 1160 (internal quotation marks omitted).

    *1.   Did L.J. and E.J. Refuse to Consent to Reevaluation?*

The first question for the Court is whether Plaintiffs refused to consent to the reevaluation.  The Court concludes that they did. Though Plaintiffs argue that, for the most part, their addendum

18

merely tracks what is required by IDEA and the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g ("FERPA"), some of their requirements are much more restrictive.  For example, the addendum specifies who shall conduct the evaluation; it requires that the parents approve each of the specific instruments to be used for the evaluation; it requires that the evaluator meet with the parents before and after the evaluation; it requires that the evaluator discuss the evaluation results with the parents before the results are submitted to the IEP team; and it requires that the evaluation be used only for the purposes of developing G.J.'s IEP.  In addition, Plaintiffs added the condition that the testing must be done in L.J.'s presence.  Even though there is evidence that Plaintiffs offered to withdraw the addendum during the pendency of the administrative proceedings (E.J. Aff. ¶ 39), the evidence also establishes that Plaintiffs sought significant conditions on the reevaluation, including a limitation that the reevaluation "not be used in litigation against [Plaintiffs]" (*id.* ¶ 41).  With such restrictions, Plaintiffs' purported consent is not consent at all.  *See Shelby S.*, 454 F.3d at 454-55 (finding that guardian's restrictions on medical information available to child's IEP team constituted lack of consent to evaluation).  The ALJ did not err in reaching the same conclusion based on the undisputed evidence.

19

> 2. *What is the Effect of Refusal to Consent to Reevaluation?*

The next question for the Court is whether Plaintiffs' refusal to consent to the reevaluation in this case means that Plaintiffs waived G.J.'s right to IDEA services.[9]  In support of her conclusion that refusal to consent to a reevaluation constitutes waiver of IDEA services, the ALJ cited *M.T.V.* and *Shelby S.*—cases in which a school district brought a due process complaint to order parents to consent to a reevaluation of a child.  *Shelby S.*, 454 F.3d at 453; *M.T.V.*, 446 F.3d at 1156.  In those cases, the courts did *not* hold that the parents had waived any right to their child's IDEA services by refusing to consent to a reevaluation.  Rather, the courts ordered a reevaluation but noted that if the parents wanted the child to continue receiving special education services, they had to permit the reevaluation.  *Shelby S.*, 454 F.3d at 455; *M.T.V.*, 446 F.3d at 1160.

Here, G.J.'s parents were never ordered to consent to a reevaluation, and they continued to express an interest in having G.J. reevaluated.  Evidence of this willingness to proceed with the

---

[9]If a parent refuses to consent to an *initial* evaluation, the school "shall not be considered to be in violation of the requirement to make available a free appropriate public education to the child." 20 U.S.C. § 1414(a)(1)(D)(ii)(III)(aa).  There is no similar provision in the reevaluation setting.  Nonetheless, if a parent's actions are unreasonable or they frustrate the school's efforts, the courts generally conclude that the school is not liable under IDEA.  *See Loren F.*, 349 F.3d at 1312-13 (noting that courts may deny reimbursement for private placement if parents act unreasonably or frustrate school's efforts).

reevaluation sought by MCSD was before the ALJ.  (*E.g.,* E.J. Aff. ¶ 39.)  Although the parties could not resolve the conditions of the reevaluation on their own (even, apparently, with the help of a mediator), it would be pure speculation to conclude that Plaintiffs would have rejected a reevaluation ordered by the ALJ.  Therefore, the Court is reluctant to find, based on the record that was before the ALJ, that Plaintiffs waived their right to continued IDEA services for G.J.  Therefore, summary determination in favor of MCSD on this basis was inappropriate.

Because summary determination *was* appropriate on the question whether Plaintiffs refused to consent to the reevaluation and because the Court "shall grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), the Court concludes that it should order L.J. and E.J. to consent to a reevaluation. This is the approach taken by a district court in Texas and ultimately affirmed by the Fifth Circuit in *M.L. ex rel. A.L. v. El Paso Independent School District*, No. 09-50436, 2010 WL 816842 (5th Cir. Mar. 9, 2010) (per curiam).  In *M.L.*, the school district determined that the child was no longer eligible for special education services for a speech disability but concluded that the child might be eligible for services based on the child's suspected Attention Deficit Hyperactivity Disorder ("ADHD"), though an additional evaluation would have to be performed to confirm that the

21

child had ADHD. *Id.* at *1. The parent refused to consent to the evaluation, and she filed a due process complaint challenging the school district's finding that the child was no longer eligible for speech services. *Id.* The school district counterclaimed, seeking permission to reevaluate the child for ADHD without the parent's consent. *Id.* Though the hearing officer denied the counterclaim, *id.*, the U.S. District Court for the Western District ordered the reevaluation, and the Fifth Circuit affirmed, *id.* at *2-*3.[10]

Following the Fifth Circuit's approach, the Court orders L.J. and E.J. to consent to a reevaluation of G.J. Plaintiffs are, of course, free to decline services under IDEA for G.J. rather than submit him to the reevaluation. The following conditions shall apply to the reevaluation:

(1) The reevaluation may be used to update G.J.'s IEP or for any other purpose permitted by IDEA.

(2) MCSD shall select the evaluator(s) to conduct the reevaluation. If the parties still agree on Dr. Lankenau, then Dr. Lankenau should be selected to conduct the reevaluation.

---

[10]Plaintiffs' position appears to be that an ALJ cannot grant any relief to a school district with regard to a reevaluation unless the school district brings its own due process complaint. Without reaching the question whether counterclaims are authorized under IDEA, the Court notes that it is counter to IDEA's goal of timely resolution of claims to require a school district to file a separate, duplicative due process complaint on an issue that is squarely before the ALJ based on the student's complaint.

(3) MCSD shall consult with Plaintiffs to determine a mutually agreeable date and time for the reevaluation.

(4) MCSD shall disclose to Plaintiffs in writing all information relevant to the reevaluation, including but not limited to (a) the date and time, (b) the location, (c) the duration, and (d) the procedures, assessment tools, and strategies to be used.

(5) The issue of whether G.J.'s parents are permitted to observe all or part of the reevaluation shall be left to the evaluator, and Plaintiffs shall be informed of the evaluator's decision prior to the reevaluation.

(6) If the evaluator determines that additional tests are necessary, then MCSD shall seek consent for those tests in accordance with these requirements.

(7) The reevaluation results and reports shall not be shared with any third parties without prior written consent from G.J.'s parents except to the extent allowed by FERPA and IDEA.

(8) The parties shall receive the reevaluation results at the same time.

(9) If G.J.'s parents disagree with the reevaluation results, they may request an IEE.

After the reevaluation is completed, G.J.'s IEP team may consider it in developing an updated IEP for G.J.  The IEP team must also consider information provided by L.J. and E.J., including the

reports prepared by Plaintiffs' experts. *See* 34 C.F.R. § 300.305(a). Because they are necessary for the development of G.J.'s IEP, any documents provided by Plaintiffs (including the expert reports) shall be considered educational records, and they shall not be shared with any third parties without prior written consent of G.J.'s parents except to the extent allowed by FERPA and IDEA.

      *3.   Should an IEE Have Been Permitted?*

      The final issue for the Court with regard to its review of the ALJ's decisions is whether the ALJ erred in finding that Plaintiffs were not entitled to an IEE.  Parents have a right, under certain circumstances, "to obtain an independent educational evaluation of the child."  20 U.S.C. § 1415(b)(1); *accord* 34 C.F.R. § 300.502.  The right to a publicly funded IEE only exists "if the parent disagrees with an evaluation obtained by the public agency."  34 C.F.R. § 300.502(b)(1).  Here, MCSD did not obtain an evaluation with which Plaintiffs disagreed; Plaintiffs refused to consent to the reevaluation.  Therefore, Plaintiffs had no right to a publicly funded IEE at the time of their request for one.

      Plaintiffs also contend that they had a right to obtain an IEE at their own expense and that they were unable to do so because MCSD would not permit their experts to observe G.J. in his classroom.[11]

_____

    [11]The Court notes that Plaintiffs apparently did receive permission for their experts to observe G.J. in his classroom sometime during 2007 or 2008.  (Compl. ¶ 58.)  Based on their observations, Plaintiffs' experts

Though parents have a "right" to a publicly funded IEE under the circumstances discussed above, neither the statute nor the regulations provide for a parental "right" to a privately funded IEE, *except* if a parent disagrees with the school's evaluation, the school files a due process complaint seeking a decision that its evaluation is appropriate, and an ALJ finds that the school's evaluation is appropriate. *Id.* § 300.502(b)(3). Again, MCSD did not obtain an evaluation with which Plaintiffs disagreed. Therefore, Plaintiffs had no right to a privately funded IEE at the time of their request for one. The ALJ's decision regarding the IEE is therefore affirmed.

## II.  Non-IDEA Claims

In addition to their IDEA claims, Plaintiffs' Complaint in this action alleges that MCSD discriminated against them because of G.J.'s disability, in violation of the ADA and Section 504. (Compl. ¶¶ 271-280.) Plaintiffs contend that MCSD denied them "services, benefits, procedures, and protections of law" because of G.J.'s disability (*id.* ¶ 275) and that MCSD created a hostile educational environment in retaliation for advocating for G.J. (*id.* ¶ 276).[12] Plaintiffs also make claims under § 1983 based on MCSD's alleged breach of

---

developed a report recommending consideration of residential placement for G.J. (*Id.*)

[12]The ADA and Section 504 claims overlap significantly with Plaintiffs' IDEA claims raised in the administrative proceeding that MCSD denied G.J. FAPE and that MCSD retaliated against Plaintiffs for pursuing their IDEA claims.

Plaintiffs' procedural due process rights.[13]   (*Id.* ¶¶ 281-288.)
Finally, Plaintiffs assert that they are entitled to relief under
Georgia law because the hearings below and the actions of MCSD
allegedly violated Plaintiffs' state special education hearing
rights.[14]  (*Id.* ¶¶ 289-295.)

IDEA allows plaintiffs to seek "remedies available under the
Constitution, the [ADA, Section 504], or other Federal laws
protecting the rights of children with disabilities."
20 U.S.C. § 1415(l).  However, "before the filing of a civil action
under such laws seeking relief that is also available under" IDEA,
the plaintiffs must exhaust their administrative remedies "to the
same extent as would be required had the action been brought under
[IDEA]." *Id.*  "Thus, whether claims asserting the rights of disabled
children are brought pursuant to the IDEA, the ADA, Section 504, or
the Constitution, they must first be exhausted in state

---

[13]The § 1983 claim is based on MCSD's alleged failure to follow its
Notice of Procedural Safeguards.  It overlaps significantly with
Plaintiffs' IDEA claim raised in the administrative proceedings that, after
the parties' disagreement regarding the reevaluation, MCSD did not adhere
to the IDEA's rules regarding development of an IEP for G.J.

[14]The Georgia law claims raise two issues.  First, Plaintiffs contend
that MCSD's actions with regard to the reevaluation and the subsequent IEP
meeting give rise to claims under Georgia law.  (*E.g.,* Compl. ¶¶ 293-295.)
These assertions overlap with Plaintiffs' IDEA claims on the same issues.
Second, Plaintiffs argue that the administrative proceeding violates
Georgia law and the IDEA.  (*E.g., id.* ¶ 292; *see also id.* ¶ 220 (alleging
that ALJ in this matter was biased against Plaintiffs and suggesting that
summary determination violates IDEA and Georgia law).)  The question
whether the administrative proceedings below violated Plaintiffs' rights
is presently before the Court.

26

administrative proceedings." *M.T.V.*, 446 F.3d at 1158.  This is so because IDEA's philosophy "'is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities.'" *Id.* (quoting *N.B. ex rel. D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (per curiam)). Therefore, Plaintiffs must "exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." *Id.* (internal quotation marks omitted); *see also Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1421-22 (11th Cir. 1998) (per curiam) (holding that where plaintiffs asserted claims under Section 504 and the ADA seeking compensatory damages and injunctive relief due to school's alleged failure to accommodate plaintiffs' chronic asthma, plaintiffs were required to exhaust IDEA's administrative procedures to obtain relief available under IDEA).  They may not "avoid the exhaustion requirement simply by asking for relief that administrative authorities [cannot] grant," such as money damages. *N.B.*, 84 F.3d at 1379.

In their due process complaints, Plaintiffs did not make any claims with regard to the non-IDEA causes of action.  Rather, Plaintiffs attempted to reserve "any and all claims, including claims under federal and state law, and claims seeking relief not available

27

under IDEIA for adjudication in court on appeal." (G.J.-1 R. 1, Due
Process Compl. 26; G.J.-2 R. 1, Due Process Compl. 19; *see also* G.J.-
1 R. 9, Pl.'s Am. Compl. 1-2.) In their second amended due process
complaint in *G.J.-1*, Plaintiffs stated: "Plaintiffs do not consent to
the adjudication of facts relevant to [non-IDEA claims] in the IDEIA
hearing procedures." (G.J.-1 R. 32, Pl.'s 2d Am. Compl. 1-2, 60-62.)

    Plaintiffs argue that they are not required to exhaust their
non-IDEA claims, contending that the IDEA's requirements for a due
process complaint and Georgia's model form for filing complaints do
not say anything about pleading or proving non-IDEA causes of action.
(Pls.' Supplemental Br. on Mot. to Dismiss Non-IDEA Claims 16.)
Also, citing a regulation that permits an OSAH ALJ to consolidate
hearings under IDEA and Section 504, Ga. Comp. R. & Regs.
§ 160-1-3-.07, Plaintiffs assert that "[t]here is no known
administrative jurisdiction under Georgia law for any Non-IDEA claim
except for [the] Section 504 claim." (*Id.*) However, Plaintiffs'
Section 504, ADA, and § 1983 claims are all closely connected to
their IDEA claims, and they seek, among other things, relief that is
available under IDEA. Therefore, Plaintiffs must exhaust their non-
IDEA claims in state administrative proceedings. *M.T.V.*, 446 F.3d at
1158. They may not "reserve" their non-IDEA claims—which seek relief
available under IDEA—even though they also ask for relief that an ALJ
cannot grant. *N.B.*, 84 F.3d at 1379. Because Plaintiffs expressly

refused to exhaust their administrative remedies with regard to the non-IDEA claims by attempting to "reserve" them and because it is not yet clear that the relief they seek will not be granted through the administrative process, the Court grants MCSD's motion to dismiss the non-IDEA claims without prejudice as premature at this time.

CONCLUSION

For the reasons set forth above, Plaintiffs are required to consent to a reevaluation of their son under the conditions described in this Order if they wish to receive services under IDEA. Therefore, Plaintiffs' motion to reverse the ALJ's decision in *G.J.-1* (Doc. 29) is granted in part, and the ALJ's decision in *G.J.-1* is reversed to the extent it is inconsistent with this Order. Plaintiffs are not entitled to an Independent Educational Evaluation at this time, and, therefore, Plaintiffs' motion to reverse the ALJ's decision in *G.J.-2* (Doc. 29) is denied, and the ALJ's decision in *G.J.-2* is affirmed.  Because Plaintiffs failed to exhaust their administrative remedies, MCSD's motion to dismiss the non-IDEA claims (Doc. 7) is granted, and those claims are denied without prejudice. Plaintiffs' motion to present additional evidence (Doc. 15) is denied, and the motion to increase discovery limits (Doc. 21) is moot.  Plaintiffs' motion for partial summary judgment (Doc. 32) is also moot.

*OBITER DICTUM*

The Court finds that several final observations are appropriate. The record in this action and in the administrative proceeding suggests that counsel have a hostility toward one another that is troubling.[15]  The briefs and other submissions from both sides contain vituperative language regarding the opposing party and counsel. Common courtesy and civility seem absent from most meetings between counsel and the parties.  The emotional strain between Plaintiffs and representatives of MCSD is understandable, but counsels' conduct in aggravating that strain is unprofessional and counterproductive. While contested legal issues require zealous advocacy, the ultimate resolution of a child's right to an adequate education also depends upon collaboration, which requires mutual respect.  The Court encourages counsel to lay down their swords, at least temporarily, so that the parties can regain their focus on the fundamental goal at the heart of their dispute: developing an appropriate educational plan for a young child who is depending upon them to do so.

IT IS SO ORDERED, this 25th day of March, 2010.


                                        S/Clay D. Land
                                      CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE

---

[15]Based on the record, it appears that the parties themselves exhibit a general lack of civility toward one another, too, but this is more understandable given the difficult and emotional issues at stake here.